UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE A. BARNES,                              Case No. 16-13714

      Plaintiff                          Paul D. Borman
v.                                           United States District Judge

COMMISSIONER OF SOCIAL                       Stephanie Dawkins Davis
SECURITY,                                    United State Magistrate Judge

      Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 16, 18)**

## I.     PROCEDURAL HISTORY

### A.     Proceedings in this Court

On October 19, 2016, plaintiff filed the instant suit seeking judicial review

of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  This

case was referred to the undersigned magistrate for all pre-trial purposes.  (Dkt. 4).

This matter is before the Court on cross-motions for summary judgment.  (Dkt. 16,

18).

### B.     Administrative Proceedings

Plaintiff filed the instant claims for a period of disability and disability

insurance benefits on November 13, 2013, alleging disability beginning August 1,

2013.  (Tr. 11).[1]  The claim was initially disapproved by the Commissioner on

March, 2014.  (Tr. 11).  Plaintiff requested a hearing, and on May 21, 2015, she

appeared and testified, with the assistance of her attorney, before Administrative

Law Judge (ALJ) Melody Paige, who considered the case *de novo*.  (Tr. 22-53).

In a decision dated August 24, 2015, the ALJ found that plaintiff was not disabled.

(Tr. 8-17).  Plaintiff requested a review of this decision (Tr. 7), and the ALJ's

decision became the final decision of the Commissioner when the Appeals Council

denied plaintiff's request for review on September 6, 2016, 2016.  (Tr. 1-6); *Wilson*

*v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1964 and was 52 years old on the date last insured,

March 31, 2017.  (Tr. 144).  Plaintiff had work history as executive assistant,

human resources generalist, a legal secretary, and a purchasing assistant.  (Tr. 157).

---

[1] The Transcript of Social Security Proceedings is cited to throughout this Report and Recommendation as "Tr.," and found at Docket Entry 12.

Plaintiff stopped working on August 23, 2013 because of her conditions. (Tr. 147). In a decision dated August 24, 2015, the ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date through the last date insured. (Tr. 13). The ALJ found that plaintiff had the following medically determinable impairments: IBS, history of hernia, and anxiety/depression. (Tr. 13). However, at step two, the ALJ found that plaintiff's medically determinable impairments were not severe impairments. *Id*. Thus, the ALJ ended her analysis at step two and concluded that plaintiff has not been under a disability from the amended alleged onset date through the last date insured. (Tr. 15-17). Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 6, 2016. (Tr. 1-7); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

    B.    <u>Plaintiff's Claims of Error</u>

    According to plaintiff, the ALJ erred by failing to consider the objective medical evidence and plaintiff's subjective complaints in his step two analysis. Specifically, plaintiff contends that when the ALJ failed to find that plaintiff's IBS; history of hernia; and anxiety/depression were severe impairments in her step two analysis. Plaintiff asserts that there is significant evidence showing that her IBS is

a severe impairment, including 28 emergency room visits, 15 of which occurred after the alleged onset date of August 1, 2013.  In addition to the multiple ER visits, plaintiff says she has consistently treated with a primary care physician, Dr. Russell Chavey.  Dr. Chavey has noted the plaintiff's diagnosis of IBS.  (Tr. 490, 493, 495, 499).  Further, Dr. Chavey opined that plaintiff has severe irritable bowel disease and assessed her prognosis as guarded.  (Tr. 504).  Moreover, physical examinations throughout the record note abdominal and epigastric tenderness.  (Tr. 651, 829, 839, 874).  Dr. Chavey completed a Residual Functional Capacity Questionnaire on December 26, 2013 specifically indicating multiple limitations due to the plaintiff's severe irritable bowel disease.  (Tr. 504-507).  Plaintiff argues that it makes little sense that her treating doctor would fill out an RFC form indicating specific limitations if she did not have a severe impairment.

Plaintiff also takes issue with the ALJ's conclusion that there is no evidence of medical treatment at the alleged onset date thus indicating no worsening or changing in the Plaintiff's condition.  (Tr. 15).  Plaintiff points out that this conclusion is not supported by the evidence because there were multiple ER visits after the alleged onset date and a clear deterioration of condition which is evidenced by the increase in ER visits as well as her doctor's opinions of disability. Furthermore, the new hire, quarter wage, and unemployment query noted a decrease from $12,214.00 in the 2nd quarter of 2013 (April – June) to only

4

$7,319.00 in the 3rd quarter of 2013 (July – September).  (Tr. 140).  Plaintiff

suggests that this drop in wages indicates that the plaintiff stopped working

sometime in the 3rd quarter of 2013, which is in line with the alleged onset date.

Also, plaintiff had three ER visits in September 2013, which also suggests a

deterioration of condition around the time of the alleged onset date.  Finally, the

certified earnings record notes no earnings in 2014 or 2015, thus adducing more

evidence that plaintiff was under a disability.  (Tr. 143).  Therefore, plaintiff

contends that ample medical evidence combined with a decrease then cessation of

earnings supports a finding that plaintiff's IBS along with her depression and

anxiety are severe impairments.

Plaintiff also points out that the ALJ at one point in her decision says she

does not have any severe impairments, (Tr. 13) then on the next page of the

decision states "[t]he above-listed impairments more than minimally affect the

claimant's ability to perform work activities on a regular and sustained basis, and

are therefore severe."  The ALJ's decision also states that plaintiff's

depression/anxiety are medically determinable impairments (Tr. 13), but later

states that there "is not a medically determinable mental impairment."  (Tr. 16).

Plaintiff argues that the above excerpts render the ALJ's decision internally

inconsistent, and thus not supported by substantial evidence.

Additionally, plaintiff asserts that the ALJ ignores any evidence that does not align with her finding of no disability, particularly with regard to medical opinion evidence.  The ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.  *McCain v. Dir., Office of Workers Comp. Programs*, 58 Fed. Appx. 184, 193 (6th Cir. 2003).  According to plaintiff, ample medical evidence supports her treating physician's opinions, which are also supported by plaintiff's subjective complaints.  Yet, the ALJ discounted all medical opinions and made an erroneous credibility assessment.

Next, plaintiff contends that the ALJ's decision to reject Dr. Chavey's treating physician opinion is not supported by substantial evidence, and the ALJ failed to comply with the procedural aspect of the treating physician rule.  (Tr. 16).  Plaintiff complains that the ALJ dismissed Dr. Chavey's assessment in a single conclusory statement declaring that the assessment is not supported by treatment records and the Plaintiff rarely presented for treatment.  (Tr. 16).  Plaintiff says that such an explanation for assigning "little weight" cannot constitute the "good reasons" contemplated by SSR 96-2p, averring further that it ignores the substantial amount of evidence to the contrary.  Plaintiff characterizes the record as full of treatment records from Dr. Chavey and multiple ER visits.  Given the nature of plaintiff's IBS, she says it follows that she would have more ER visits than

regular doctor visits.  Furthermore, she states that the ALJ does not properly consider the extent to which Dr. Chavey was fully involved in the longitudinal picture of plaintiff's care.  Specifically, Dr.  Chavey noted that plaintiff's severe IBS attacks would result in hospital stays 4 – 6 times per year, and that these episodes last 1 – 5 days requiring IV hydration and observation.  (Tr. 504).  She points out that this is in line with plaintiff's treatment record.  Since Dr. Chavey is privy to plaintiff's condition and in a position to render an opinion given his history of treating plaintiff and accurate portrayal of the severity, the ALJ's decision to give "little weight" is not supported by substantial evidence and was made without giving "good reasons."

Finally, plaintiff alleges that the ALJ made an improper credibility assessment.  According to plaintiff, the ALJ uses boilerplate credibility language stating: "the claimant's testimony … the intensity of the claimant's symptoms and their alleged impact on her functioning is not consistent with the totality of the evidence."  Plaintiff cites the Seventh Circuit in *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012), which provides that this type of language is "essentially meaningless."  Plaintiff urges the Court to find that the ALJ's language is likewise meaningless since it does not specifically state which parts of plaintiff's testimony she finds credible and which are not credible.  Furthermore, the ALJ's conclusion that plaintiff's drug seeking behavior calls her credibility into question relies on an

assumption that is wrong and irrelevant.  Although there are some instances in the record of drug seeking behavior, plaintiff says that this behavior can most likely be attributed to the severe pain she was in and the fact that the medication Dilaudid was the only medication that provided some relief.  Plaintiff testified at the hearing that an IV of Dilaudid is the only thing that helps stop vomiting.  (Tr. 35).  Plaintiff also points out that there is no evidence of positive drug tests in the record, nor is there any evidence that plaintiff uses recreational drugs.  Finally, the ALJ does not specifically identify any testimony of plaintiff or make any personal observations regarding credibility.  .  Thus, according to plaintiff, the ALJ has made an insufficient and incorrect credibility assessment, particularly in light of the *de minimis* standard required in a Step Two analysis.

     C.    <u>The Commissioner's Motion for Summary Judgment</u>

    The Commissioner first argues that plaintiff utilizes the wrong standard of review in challenging the ALJ's step two analysis in that plaintiff focuses on whether there is evidence to support the her contention that her impairment is severe, rather than on whether there is substantial evidence in the record to support the ALJ's conclusion that it is not.  *See Potter v. Comm'r of Soc. Sec.*, 223 Fed. Appx. 458, 464, (6th Cir. 2007) ("The question on review is not whether substantial evidence, or even the weight of the evidence, supports [Plaintiff's] position.  Rather, this court is only asked to decide if the record includes

substantial evidence to support the Commissioner's determination."). The

Commissioner acknowledges that Step two is a "de minimis hurdle" *Higgs v.*

*Bowen*, 880 F.2d 860, 862 (6th Cir. 1988), used to "screen out 'totally groundless

claims.'" *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 428 (6th Cir. 2007)

(quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir.

1985)). At that point in the sequential evaluation, plaintiff was required to

demonstrate that she experienced a severe, medically determinable impairment that

could be expected to result in death, or that lasted—or could be expected to last—

for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii);

20 C.F.R. § 404.1509; *Foster v. Sec'y of Health & Human Servs.*, 1990 WL 41835,

at *2 899 F.2d 1221 (6th Cir. Apr. 11, 1990) ("It was [the claimant's] burden to

show the severity of his impairments."). "[A]n impairment or combination of

impairments is considered 'severe' if it significantly limits [the claimant's]

physical or mental abilities to do basic work activities." Social Security Ruling

(SSR) 96-3p available at 1996 WL 374181, at *1. "An impairment or combination

of impairments is not severe if it does not significantly limit [the claimant's]

physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a)

(effective to March 26, 2017). Or, in other words, "[a]n impairment or

combination of impairments is found 'not severe'…when medical evidence

establishes only a slight abnormality or a combination of slight abnormalities

which would have no more than a minimal effect on an individual's ability to work…"  SSR 85-28 available at 1985 WL 56856, at *3.

According to the Commissioner, the medical record consists almost entirely of emergency room visits.  Plaintiff's theory is that the ALJ should have determined that her irritable bowel syndrome was disabling or, at the very least, that it was a severe impairment because she repeatedly sought out emergency room treatment for abdominal pain.  Yet, as one doctor put it, "[t]here [was] no evidence to suggest that [Plaintiff] [had] true abdominal pain." (Tr. 962); (Tr. 800) ("[Plaintiff] presented for recurrent abdominal pain. She has had several visits to the EC for this in the past.  On all of these visits, there have been no acute emergencies found or explanations for her chronic abdominal pain.").  Instead, according to the Commissioner, the record strongly suggests that the driving force behind her multiple emergency room visits was her desire to obtain Dilaudid.  The Commissioner points to evidence showing that she went so far as to "literally beg[] for [it] by name."  (Tr. 800); (Tr. 714) ("She is [a] Dilaudid seeker… She kept asking for Dilaudid even though it was explained to her multiple times that it is not indicated in her condition… [O]nce this decision was made she came up to the doctor's room and demanded discharge"); (Tr. 962) ("history of drug-seeking behavior"); (Tr. 982) ("drug seeking behavior"); (Tr. 1072) ("drug-seeking behavior for the past few years"); (Tr. 1076) ("I am concerned that [Plaintiff] is

10

here for narcotics specifically.  The fact that she is continually asking for Dilaudid specifically is a concern… After having this conversation, the [Plaintiff] simply asked to be discharged.  Again, I would be highly cautious prescribing her any narcotics unless there is an explicit reason to do so."); (Tr. 1355) ("drug-seeking behavior").

The Commissioner also points out that her examinations and test results were largely unremarkable.  Occasionally when visiting the emergency room, plaintiff would appear to be uncomfortable (Tr. 673, 798, 861, 890) or have some abdominal tenderness (Tr. 464, 468, 829, 861, 973, 1022, 1057) but, in the vast majority of instances, she was in no distress (Tr. 463, 468, 488, 691, 705, 755, 779, 829, 846, 874, 927, 931, 970, 973, 983, 1005, 1034, 1052, 1074) and received normal examinations of her abdomen. (Tr. 238, 488, 673, 691, 705, 724, 756, 768, 779, 781, 798, 839, 846, 880, 884, 890, 927, 931, 960, 1009, 1034, 1052, 1061, 1074, 1333, 1336, 1354).  She received a battery of largely normal abdominal imaging, (Tr. 212, 214, 829, 863, 866, 892), biopsies (Tr. 671, 1337), physical examinations (Tr. 234, 468, 673, 691, 705, 723-724, 755-756, 768, 779, 798, 829, 839, 846, 853, 861, 879-880, 884, 890, 927, 931-932, 1008-1009, 1021-1022, 1028, 1052, 1061, 1074, 1333, 1336, 1354), acute abdominal series (Tr. 484-485, 831, 995, 1042, 1350), colonoscopies (Tr. 860, 1336), gastric emptying scans (Tr. 953-954), laboratory studies (Tr. 726, 880, 962, 1010), and

esophagogastroduodenoscopies (Tr. 227, 466, 689, 860), (Tr. 1072) ("extensive unremarkable workup").  Her latest treatment note from March 2015 states that she was only getting intermittent flares of irritable bowel syndrome, and that she was doing well in between those flares.  (Tr. 1333).  There is also no record of her seeking any treatment in the five months between that visit and the date of the ALJ's decision.  *Hamlin v. Comm'r of Soc. Sec.*, 1996 WL 729287, at * (6th Cir. Dec. 17, 1996) ("gaps in a history of medical treatment are likely to suggest that the claimant was not receiving treatment during the gaps and was not disabled then.").  Thus, based on the evidence set forth above showing normal objective evidence; her drug-seeking behavior; and the lack of treatment with a primary care physician or gastrointestinal specialist (Tr. 15), the ALJ found that plaintiff's irritable bowel syndrome was not a severe impairment.

The Commissioner also maintains that the alleged inconsistencies in the ALJ's decision were typographical errors that were harmless.  The Commissioner contends that the ALJ accidentally stated in a single boilerplate sentence that plaintiff had severe impairments (Tr. 14), but since the ALJ spent the next three-plus pages explaining why plaintiff did not have any severe impairments (Tr. 14-17), inclusion of that language was a clear typographical error and is harmless. *Lund v. Colvin*, 2014 WL 1153508, at *4 n. 3 (D. Minn. Mar. 21, 2014) (collecting cases showing that typographical errors are harmless).  The Commissioner posits

that the same is true of the ALJ's statement about plaintiff's depression.  The ALJ initially stated, again, in one boilerplate sentence, that it was a medically determinable impairment.  (Tr. 13).  She then spent three full paragraphs explaining the medical determinability standard and finding that plaintiff's depression was not a medically determinable impairment.  (Tr. 16).  According to the Commissioner, the context makes it clear that the ALJ meant to find that Plaintiff's depression was not medically determinable, and her earlier statement to the contrary was "merely a scrivener's error."  *McAllister v. Colvin*, 2017 WL 1190952, at *2 (E.D. Mich. Mar. 31, 2017).

The Commissioner also contends that the ALJ's weighing of the medical opinion evidence is supported by substantial evidence.  In December 2013, Dr. Chavey filled out an "irritable bowel syndrome residual functional capacity questionnaire," and found that plaintiff was more limited than ultimately recognized by the ALJ.  (Tr. 504-507).  The Commissioner acknowledges that, prior to writing the opinion, Dr. Chavey had met with plaintiff enough times to have an "ongoing treatment relationship" (Tr. 489, 492, 495, 498) that qualifies him as a treating source.  Nevertheless, the ALJ rejected Dr. Chavey's opinion because plaintiff "rarely presented to [his office] for any treatment; thus, the assessment is not supported by treatment records and rendered less persuasive." (Tr. 16); *Davis v. Comm'r of Soc. Sec.*, 2016 WL 4445774, at *7 (E.D. Mich. July

29, 2016), R&R adopted, 2016 WL 4429641 (E.D. Mich. Aug. 22, 2016)

(permitting ALJs to discount medical opinion when they are "either unsupported or

inconsistent").  The Commissioner asserts that, if anything, the ALJ's description

of Dr. Chavey's opinion was too charitable since his opinion was not only

unsupported by his notes, but also outright contradicted by those notes.  According

to the Commissioner, the gist of Dr. Chavey's opinion was that plaintiff's

abdominal pain and its associate symptoms greatly affected her ability to work.

(Tr. 504-507).  Yet, much like plaintiff's emergency room records, Dr. Chavey's

treatment notes showed that plaintiff had no abdominal pain.  (Tr. 490, 493, 496,

499, 931).  Thus, while plaintiff contends that her emergency room records support

Dr. Chavey's opinion, the Commissioner maintains, as explained above, that they

do the exact opposite.

    As to plaintiff's credibility claim, the Commissioner acknowledges that

because the ALJ denied plaintiff's claim at step two, she was required to assess

plaintiff's credibility at that step.  *See Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir.

2015) (discussing SSR 96–3p, available at 1996 WL 374181, at *2).  In doing so,

the ALJ found plaintiff's credibility wanting based on the unremarkable objective

evidence, plaintiff's drug seeking behavior, and her lack of non-emergency room

treatment.  (Tr. 15-17).  The ALJ also questioned plaintiff's August 1, 2013 onset

date because plaintiff experienced irritable bowel syndrome prior to that date (Tr.

204), and the ALJ opined that the record did not support a conclusion that it worsened around that time.  (Tr. 15).  While plaintiff highlights her decreased earnings in the third quarter of 2013 as evidence of a downturn in her condition around the onset date, the Commissioner points out that the reason for the decreased earnings in that quarter was because her contract job with the Ford Motor Company ended.  (Tr. 27-28, 148, 157).  As to her contention that her emergency room visits in September 2013 demonstrated that her condition worsened, the Commissioner says all those visits demonstrated was more drug-seeking behavior (Tr. 714), and more unremarkable objective examinations.  (Tr. 227-228, 234, 237-238, 673, 677-678, 704-705).

Addressing plaintiff's complaint about "boilerplate language," the Commissioner contends that at best, plaintiff has identified a harmless error because the ALJ accompanied the boilerplate statement with "an adequate explanation of the adverse credibility finding."  *Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. Appx. 162, 174 (6th Cir. 2016).  And, the Commissioner says that the ALJ's consideration of plaintiff's drug-seeking behavior was an entirely appropriate. *Jackson v. Comm'r of Soc. Sec.*, 2015 WL 4611472, at *7 (W.D. Mich. July 31, 2015) (collecting cases).

Finally, to the extent that the ALJ did not specifically identify any testimony of plaintiff or make any personal observations regarding credibility, the

Commissioner points out that the ALJ was not "required to discuss each piece of data in [her] opinion, so long as [she] consider[ed] the evidence as a whole and reach a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec. Admin*., 397 Fed. Appx. 195, 199 (6th Cir. 2010). According to the Commissioner, the ALJ stated on multiple occasions that she considered the entire record (Tr. 13) and, as discussed at length above, she reached a reasoned conclusion when she found that plaintiff failed to prove the existence of a severe impairment.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

17

appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status.  Title XVI benefits are

available to poverty stricken adults and children who become disabled.  While the

two programs have different eligibility requirements, "DIB and SSI are available

only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th

Cir. 2007).  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed

to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

     C.    <u>Analysis and Conclusions</u>

Under the Regulations, the ALJ must consider whether a claimant's impairment is a medically determinable impairment at Step Two.  *See* 20 C.F.R. § 404.1520.  A medically determinable impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Jones v. Comm'r of Soc. Sec.*, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017), *report and recommendation adopted sub nom. Jones v. Berryhill*, 2017 WL 1196179 (S.D. Ohio Mar. 31, 2017) (citing 20 C.F.R. §§ 404.1505, 404.1508, 404.1520(a)(4)(ii) and 404.1527(a)(1)).  "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source.  We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."  20 C.F.R. § 404.1521; *see also Tolbert v. Comm'r of Soc. Sec.*, 2012 WL 4176876, at *4 (E.D. Mich. Aug. 27, 2012), *report and recommendation adopted*, 2012 WL

4165649 (E.D. Mich. Sept. 18, 2012) (citing Social Security Ruling 96–4p, 1996 WL 374187 at *1) ("A diagnosis establishes medically determinable impairment only where it is supported by objective medical evidence.").  There is no error in failing to consider non-medically determinable impairments throughout the sequential analysis.  *See Jones*, 2017 WL 540923, at *6 ("If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC.") (citing *Rouse v. Comm'r of Soc. Sec.*, 2017 WL 163384, at *4 (S.D. Ohio Jan. 17, 2017) (stating that a "claimed condition which is not 'medically determinable' need not be considered at all" in determining a claimant's RFC)); *see also* 20 C.F.R. §§ 404.1527(a)(1), 404.1545(a)(2).  In this case, the ALJ determined that plaintiff's IBS, history of hernia, and anxiety/depression were "medically determinable impairments."  (Tr. 13).

### 1.    Finding of Nonsevere Impairments

However, the ALJ also concluded that plaintiff's medically determinable impairments were nonsevere at step two.[2]  In evaluating a claimant's medically

---

[2]  The Commissioner's argument that the Decision's language stating that plaintiff does have a severe impairment reflects a typographical error is well-taken.  In context, it is clear that the omission of the word "not" was a scrivener's err, as the ALJ goes on to discuss at length her conclusion that plaintiff does not have any severe impairments.  The same is true of the Decision's language concerning depression/anxiety.  The mistakes are regrettable given the matters at stake.  However, the ALJ's true meaning is easily discernible for the analysis on each topic, requiring no further discussion concerning error.  *Lund v. Colvin*, 2014 WL 1153508, at *4 n. 3 (D. Minn. Mar. 21, 2014) (collecting cases showing that typographical errors are harmless); *McAllister v. Colvin*, 2017 WL 1190952, at *2 (E.D. Mich. Mar. 31, 2017).

determinable impairments at step two, the ALJ must consider whether a claimant's

medically determinable impairment is a severe impairment and whether the

impairment(s) meet the twelve month durational requirement in 20 C.F.R.

§ 404.1509.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v.

Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009).  The applicant

bears the burden of establishing the existence within the administrative record of

objective medical evidence suggesting that the applicant was "disabled" as defined

by the Act.  In order to be classified as severe, an impairment or combination of

impairments must significantly limit the claimant's physical or mental ability to do

basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work

activities, defined in the regulations as "the abilities and aptitudes necessary to do

most jobs," include: (1) physical functions such as walking, standing, sitting,

lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing,

hearing, and speaking; (3) understanding, carrying out, and remembering simple

instructions; (4) use of judgment; (5) responding appropriately to supervision, co-

workers, and usual work situations; and (6) dealing with changes in routine work

settings.

        The present case is factually very similar to that presented in *McClanahan v.

Comm'r of Soc. Sec.*, 2011 WL 672059, at *3 (S.D. Ohio Feb. 16, 2011).  In

*McClanahan*, the Court concluded that the ALJ's finding of non-severity as to

plaintiff's IBS was supported by substantial evidence.  *Id*.  The court first pointed to the well-established rule that the mere diagnosis of an impairment does not indicate that it is severe.  *Id*. (citing *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. Appx. 771, 779 (6th Cir. 2008).  Most importantly however, the court relied on the lack of objective evidence supporting the plaintiff's claim that his abdominal pain affected his ability to do "basic work activities."  *Id*.  More particularly, the court concluded that the plaintiff's emergency room visits were not persuasive of a severe impairment because there was no substantial evidence for finding anything more than a slight abnormality.  For instance, in relation to his alleged abdominal pain, the plaintiff in *McClanahan* was frequently out of medication or on none at all.  He also frequently failed to follow up with his gastroenterologist as directed.  Additionally, he was suspected of drug-seeking behavior, and of visiting hospitals merely to obtain narcotics.  Significantly, the plaintiff's diagnostic tests consistently revealed normal findings.  *Id*. ("CT scans of Plaintiff's abdomen and pelvis showed no acute abnormalities.  Two colonoscopies yielded unremarkable results.  X-ray's of Plaintiff's abdomen revealed no acute abnormalities."; "A sigmoidoscopy yielded normal results.  Plaintiff's hemoglobin and hemocrit remained normal despite complaints of rectal bleeding.  And finally, an EGD showed some gastritis and duodenal ulcers, but was otherwise normal.").  The court also made note of the fact that the plaintiff did not require a specialist's

treatment, as his gastroenterologist had recommended that the plaintiff see a family-practice physician for his complaints instead of further gastrointestinal treatment.  It was further observed that the plaintiff never sought such treatment, and despite being prescribed Bentyl for irritable bowel syndrome, the plaintiff never complained to his physician of any related IBS symptoms.  He also denied that he experienced any nausea, vomiting, or changes in bowel habits.  As a result, the court concluded that the plaintiff's "multiple emergency rooms visits for abdominal pain and rectal bleeding are not persuasive of a severe impairment ...." *Id*.

Similarly, the undersigned finds that the ALJ's findings of a non-severe impairment here is also supported by substantial evidence.  The ALJ accurately observed that, notwithstanding an increase in the number of emergency room visits, there was no significant change in plaintiff's condition before and after the alleged onset date to suggest a worsening in condition.  (Tr. 15).  This conclusion is borne out by the medical records which reveal that since the alleged onset date, while plaintiff has had repeated visits to the emergency room, the resulting diagnostic tests and physical exams are largely within normal limits.  *Id*.  As the Commissioner explains, occasionally when visiting the emergency room, plaintiff would appear to be uncomfortable (Tr. 673, 798, 861, 890) or have some abdominal tenderness (Tr. 464, 468, 829, 861, 973, 1022, 1057) but, in the vast

majority of instances, she was in no distress (Tr. 463, 468, 488, 691, 705, 755, 779, 829, 846, 874, 927, 931, 970, 973, 983, 1005, 1034, 1052, 1074) and received normal examinations of her abdomen.  (Tr. 238, 488, 673, 691, 705, 724, 756, 768, 779, 781, 798, 839, 846, 880, 884, 890, 927, 931, 960, 1009, 1034, 1052, 1061, 1074, 1333, 1336, 1354).  Plaintiff also underwent a battery of largely normal abdominal imaging and other testing, (Tr. 212, normal hepatobiliary and sincalide injection study; 213-14, normal CT and US of abdomen; 484-485, normal acute abdominal series; 829-831, 833, acute abdominal series showed no acute process, gallbladder US unremarkable; 863, acute abdominal series normal; 866, unremarkable CT of abdomen/pelvis; 892, acute abdominal series normal; 995, normal acute abdominal series; 1042, normal acute abdominal series; 1350, normal acute abdominal series; 860, 1336, normal colonoscopies; 953-954, normal gastric emptying scans; 726, 880, 962, 1010, normal laboratory studies; 227, 466, 689, 860, normal esophagogastroduodenoscopies (EGD); 1072, "extensive unremarkable workup"; 671, 1337, EGD showed gastritis, no ulcers, no bleeding, normal biopsies).  While these tests showed some positive clinical findings, they are largely normal or unremarkable.  Further, plaintiff's latest treatment note from March 2015 stated that she was only experiencing intermittent flares of irritable bowel syndrome, and that she was doing well in between those flares.  (Tr. 1333).  The ALJ's conclusion that plaintiff has not shown a worsening of her condition

after the alleged onset date, thus undermining her claim that she cannot work, is supported by substantial evidence in the record.

The ALJ also concluded that plaintiff's claim of disabling symptoms was undercut by her apparent drug-seeking behavior, which suggests her symptoms and condition were not as severe or limiting as alleged. The ALJ's conclusion is supported by substantial evidence in the record. Indeed, suggestions of drug-seeking behavior are replete throughout plaintiff's medical records.

- Tr. 207-208, 3/2/12 Beaumont Troy Hospital notes "possible drug-seeking behavior";

- Tr. 237-238, 9/16/13, Beaumont Troy Hospital notes, "questionable drug-seeking behavior";

- Tr. 265-66, 3/2/12 Beaumont Troy Hospital notes, "possible drug-seeking behavior";

- Tr. 489, 7/22/13 Dr. Chavey note, "Pt. demonstrates a lot of drug seeking and drug abuse behaviors, but on the other hand, seems to go for extended periods of time not using narcotics.";

- Tr. 768, 1/19/14 Royal Oak Hospital note, "Patient did demonstrate drug-seeking behavior";

- Tr. 800-801, 1/30/14 Royal Oak Hospital note, "Pt was given an initial dose of Dilaudid along with Zofran, which did not seem to do much for her. I wanted to continue therapy with Toradol, phenergan and GI cocktail. Pt did not wish to receive Toradol and was requesting Dilaudid specifically. I have explained to her my reason for not wanting to proceed with Dilaudid: 1. We already attempted this and it did not improve the situation and 2. It is becoming suspicious that this is the only drug that will help alleviate her symptoms. She states this is the only way her pain will be alleviated and allow her to go home. I have taken the time to explain to her why I do not

feel comfortable giving her more narcotics and the situation is starting to
have the appearance of drug seeking behavior. She has displayed bargaining,
all of her tests do not point to any demonstrable pathology and the pt has
been quite literally begging for Dilaudid by name. I have informed her that
this will be the final dose of Dilaudid she is to receive. If her pain is to
return, we will not give further narcotics. **I have also instructed that on
future visits to the EC she should expect to not receive narcotics for the
exact reasons I have listed. Thus for further visits I would highly
recommend that narcotics be avoided unless there is a difference to her
presentation or a demonstrable indication**. (emphasis in original)"

- Tr. 962, 4/7/14 Royal Oak Hospital note, "history of drug-seeking
  behavior.";

- Tr. 981, 4/11/14 Royal Oak Hospital note, "drug seeking tendencies";

- Tr. 1033-34, 9/10/14 Royal Oak Hospital note, history of drug-seeking
  behavior, "This time also the same thing happened yesterday, the same
  story, and she came to the hospital for evaluation.  By the time she was in
  the ER, the nausea subsided and all the workup came back negative, but the
  patient did not want to go home because of the symptoms and the pain, etc.";

- Tr. 1062, 11/24/14 Royal Oak Hospital note, "drug seeking behavior",
  "continues to ask for pain medication.";

- Tr. 1072, 12/31/14, Royal Oak Hospital note, "drug-seeking behavior for the
  past few years with extensive unremarkable workup.";

- Tr. 1076, 12/31/14 Royal Oak Hospital note, Dr. Kam states:  "drug-seeking
  behavior is certainly a possibility" and she is "completely appropriate for
  outpatient treatment."…"I am concerned that this pt is her for narcotics
  specifically. The fact that she is continually asking for Dilaudid specifically
  is a concern." I had the same conversation with her last time and repeated
  that conversation today.  After having this conversation, the pt simply asked
  to be discharged. Again, I would be highly cautious prescribing her any
  narcotics unless there is an explicit reason to do so."

The record citations set forth above make clear that various emergency providers, consulting gastroenterologists, and plaintiff's own treating physician all suspected drug-seeking behavior over the course of multiple years. Viewing their notes in aggregate, their suspicions appear to be borne out. Thus, the undersigned concludes that the ALJ's reliance in part on her drug-seeking behavior as grounds for finding plaintiff's condition to be less than severe is fully supported by substantial evidence in the record.

### 2.      Weighing Medical Opinions

In concluding that plaintiff's medically determinable impairments were non-severe, the ALJ gave little weight to the assessments of plaintiff's treating physician opinions. First, the ALJ looked as the assessment of Dr. Kambiz Bral's opinion, noting that he saw plaintiff only through emergency room visits and did not have a treating relationship with her. (Tr. 15; 508-510).[3] Dr. Bral opined that the length that plaintiff could walk depended on the availability of restrooms; that she could only sit and stand for 30 minutes at a time; that she could only sit and stand/walk for about two hours per day each, she required ready access to a restroom; and that she would need unscheduled restroom breaks every day. Dr.

---

[3] It is not entirely clear from plaintiff's brief whether she maintains that Dr. Bral is a treating physician. She specifically mentions Dr. Chavey's opinions in the section of her brief regarding treating physician opinions, but plaintiff also discussed Dr. Bral's opinions in her statement of facts and complained that the ALJ improperly "discounted all medical opinions." (Dkt. 16, p. 14). In an abundance of caution, the undersigned will address whether the ALJ properly weighed Dr. Bral's opinions.

Bral's opinion that plaintiff could frequently lift/carry under 10 pounds, occasionally lift/carry 10 pounds, rarely lift/carry 50 pounds and never lift over 50 pounds.  He also opined that she would be off work more than 4 days per month. (Tr. 508-510).  His opinions, as a non-treater, were accorded no weight by the ALJ.

As a nontreating source, "the ALJ is not required to give "good reasons" for rejecting a nontreating source's opinions in the same way as must be done for a treating source." *Chandler v. Comm'r of Soc. Sec.*, 2014 WL 2988433, at *8 (S.D. Ohio July 1, 2014).  "Instead, for nontreating sources, the Commissioner weighs these opinions based on a number of factors including: the examining relationship (or lack thereof), specialization, consistency, and supportability. *Jackson v. Comm'r of Soc. Sec.*, 2015 WL 5634671, at *8 (S.D. Ohio Sept. 25, 2015) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).  In the view of the undersigned, Dr. Bral's emergency room notes are fairly unremarkable and do not support the limitations suggested.  On September 21, 2013, he observed that plaintiff was "pretty much stable" and his other findings were equally unremarkable.  (Tr. 705).  Dr. Bral also saw plaintiff on January 19, 2014 at which time he recommended starting Reglan and Elavil.  (Tr. 773).  On April 10, 2014, Dr. Bral performed a gastroscopy, which showed mild duodenitis, gastritis, and a hiatal hernia.  (Tr. 984).  Dr. Bral again consulted when plaintiff presented to the emergency room in September 2014, where she received Reglan.  (Tr. 1034-35).  He again consulted while she was in

the emergency room in November 2014, where he prescribed Bentyl and Reglan. (Tr. 1062-63). Thus, while Dr. Bral is a specialist, he is a non-treater, and the limitations he imposed on plaintiff are unsupported by his records. Therefore, the ALJ properly gave his opinions no weight.

As to plaintiff's treating physician, Dr. Chavey, the ALJ accorded his opinion little weight because plaintiff rarely presented to him for treatment and his assessment was not supported by his treatment records.[4] Dr. Chavey opined that plaintiff suffers from "severe irritable bowel disease," with symptoms of chronic diarrhea, abdominal pain and cramping, and vomiting. (Tr. 504). He said that plaintiff suffered from 4-6 severe attacks per year requiring hospitalization and that each episode lasts 1-5 days. *Id*. He opined that plaintiff would be off task more than 25% per day and that she was incapable of even low stress jobs. *Id*. at 505. According to Dr. Chavey, plaintiff could not sit more than 2 hours at a time and could only stand for 15 minutes at a time. He also said that they could sit only two hours total per day and could stand/walk less than 2 hours per day. *Id*. at 506. He further indicated that plaintiff would require ready access to a restroom, would require unscheduled breaks and would need to lie down 1-3 time per week during

---

[4] The ALJ gave some weight the state agency's conclusions that plaintiff was not disabled, although the ALJ did not discuss the state agency physician's conclusion that plaintiff had severe impairments. (Tr. 15-16; Tr. 60). Plaintiff does not appear to object to the ALJ's weighing of this opinion.

the work day. *Id*. Dr. Chavey opined that she could occasionally lift/carry less than 10 pounds, rare lift/carry 10 pounds, and never lift 20+ pounds. *Id*. at 507. He also indicated that plaintiff would miss work more than four days per month because her impairments.

The opinion of a treating physician should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 376 (6th Cir. 2013). Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must apply specific factors to resolve the question of what weight will be assessed. Those factors include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source.

*Id.; see also Wilson,* 378 F.3d at 544.  Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight.  *Gayheart* at 376-77.

"Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms." *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 440 (6th Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).  An ALJ may meet those goals by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record.  *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006) (no error in ALJ's failure to explain weight given to two treating physicians or failure to give good reasons for discounting them where ALJ thoroughly explained other medical evidence that indirectly attacked the consistency of the treating physicians' opinions).  In *Coldiron*, the court held that even if the ALJ's stated reasons for rejecting a physician's opinion were not "good reasons," the ALJ sufficiently indirectly attacked the supportability and consistency of the opinion such that any error was harmless.  391 Fed. Appx. at 440-41.  The ALJ indirectly attacked the consistency of the opinion that the plaintiff could not lift or carry any weight at all when the ALJ explained that the

state agency physicians found that the plaintiff lacked a "diminished capacity for lifting/carrying." *Id.* And although the physician stated that plaintiff could walk for only twenty minutes in an eight-hour workday and his ability to sit was limited, other medical evidence showed he could stand and sit for six hours out of eight. *Id.* at 441. The plaintiff's own statements also undermined the doctor's opinion. *Id.*

Here, while the ALJ's *Gayheart* analysis may be lacking in some respects, the undersigned finds that any error is harmless under the principles set forth in *Coldiron.* As discussed in great detail above, the ALJ thoroughly examined all the record evidence, finding that plaintiff's symptoms and alleged limitations were not well-supported by the objective medical evidence, including the extensive tests which revealed largely normal results, the lack of abdominal pain, by plaintiff's extensive drug-seeking behavior, and by the plaintiff's failure to follow through regularly with treatment from a gastroenterology specialist. (Tr. 15) ("…there are minimal treatment records with a primary care physician or gastrointestinal specialist…claimant instead turned to the emergency room.").[5] The ALJ's analysis thoroughly establishes that Dr. Chavey's opinions (1) are not supported by his own

---

[5] Plaintiff was repeatedly advised to follow up with the University of Michigan or Dr. Kam but did so rarely. (Tr. 205, 234, 243, 247, 264, 299, 300, 303, 304, 337, 401, 445, 473). Plaintiff was seen at the University of Michigan once. (Tr. 748, 825-26). There are minimal treatment records with Dr. Kam, outside of her emergency room treatment, on which he sometimes consulted. (Tr. 1333-36).

treating records, which are fairly minimal;[6] (2) are not supported by the extensive

emergency room treatment records, which show minimal symptoms; and (3) are

not supported by the extensive unremarkable workups and plaintiff's significant

drug-seeking behaviors.

### 3. Credibility

"Credibility determinations concerning a claimant's subjective complaints

are peculiarly within the province of the ALJ." *See Gooch v. Sec'y of Health &*

*Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  "Upon review, [the court must]

accord to the ALJ's determinations of credibility great weight and deference

particularly since the ALJ has the opportunity, which [the court] d[oes] not, of

observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*,

336 F.3d 469, 476 (6th Cir. 2003).  Thus, an ALJ's credibility determination will

not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379

(6th Cir. 2001).  The ALJ is not required to accept the testimony of a claimant if it

conflicts with medical reports, the claimant's prior statements, the claimant's daily

activities, and other evidence in the record.  *See Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 531 (6th Cir. 1997).  Rather, when a complaint of pain or other

---

[6] Dr. Chavey and his colleague Dr. Kenneson saw plaintiff twice in 2012 and three times in 2013.  (Tr. 487, 489, 504, 495, 498).  Notably, only one visit occurred after the alleged onset date.  (Tr. 487).

symptoms is in issue, after the ALJ finds a medical condition that could reasonably

be expected to produce the claimant's alleged symptoms, he must consider "the

entire case record, including the objective medical evidence, statements and other

information provided by treating or examining physicians . . . and any other

relevant evidence in the case record" to determine if the claimant's claims

regarding the level of his pain are credible.  SSR 96-7p, 1996 WL 374186, at *1;

*see also* 20 C.F.R. § 416.929.  "Consistency between the plaintiff's subjective

complaints and the record evidence tends to support the credibility of the

[plaintiff], while inconsistency, although not necessarily defeating, should have the

opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th

Cir. 2011).

The undersigned also finds that the ALJ's credibility analysis is supported

by substantial evidence.[7]  First, plaintiff's complaint about "boilerplate language,"

is without merit because, as discussed in detail above, the ALJ accompanied the

boilerplate statement with "an adequate explanation of the adverse credibility

---

[7] Subsequent to the date of the ALJ's decision, the Social Security Administration issued new Social Security Ruling 16-3p, which supersedes Social Security Ruling 96-7p.  *Ramsey v. Comm'r of Soc. Sec.*, 2018 WL 656029, at *8 (N.D. Ohio Feb. 1, 2018).  The Sixth Circuit characterized SSR 16-3p as merely eliminating "the use of the word 'credibility'...to 'clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 Fed. Appx. 113, 119 n.1 (6th Cir. 2016).  The Social Security Administration has stated SSR 16-3p is not to be applied retroactively.  *Ramsey*, at *8 (citing 82 Fed. Reg. 49462, 49468 n.27 (Oct. 25, 2017), available at https://www.gpo.gov/fdsys/pkg/FR-2017-10-25/pdf/2017-23143.pdf).

finding." *Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. Appx. 162, 174 (6th Cir. 2016).

Indeed, the ALJ's credibility analysis can be found throughout her decision, where

she discussed the lack of positive clinical findings, the largely normal test results,

the lack of abdominal pain found at most encounters, the drug-seeking behavior,

the lack of follow up with a specialist, and the few encounters with any treating

physician.  Moreover, the Commissioner correctly points out that consideration of

plaintiff's drug-seeking behavior was entirely appropriate.  *Ramsey v. Comm'r of

Soc. Sec.*, 2018 WL 656029, at *10 (N.D. Ohio Feb. 1, 2018) (An ALJ can

appropriately consider evidence of drug-seeking behavior in his credibility

assessment) (citing *Randolph v. Colvin*, 2016 WL 1626949, at *11 (N.D. Ohio

2016) (collecting cases); *see also*, *Quattlebaum v. Comm'r of Soc. Sec.*, 2017 WL

5013556, at *11 (E.D. Mich. Nov. 2, 2017) (citing *Smith v. Comm'r of Soc. Sec.*,

2013 WL 6094745, at *6 (E.D. Mich. Nov. 20, 2013) ("[T]he fact that Plaintiff

exhibited drug-seeking behavior weighs against her credibility.").  For these

reasons, the undersigned finds that the ALJ's credibility analysis was more than

adequate and is supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: March 6, 2018                    s/Stephanie Dawkins Davis
                                       Stephanie Dawkins Davis
                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 6, 2018, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                       s/Tammy Hallwood
                                       Case Manager
                                       (810) 341-7887
                                       tammy_hallwood@mied.uscourts.gov